IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Earl W. Burkholder, Jr., *et al.*,                               Case No. 3:02CV7422

      Plaintiffs,

   v.                                                                              ORDER

International Union United Automobile,
   Aerospace and Agricultural Implement
   Workers of America, Local. No. 12, *et al.*,

      Defendants.


This is a dispute between machine repairmen and the International Union United Automobile, Aerospace and Agricultural Implement Workers of America, Local. No. 12 (Local 12) regarding the distribution of certain job duties at the DaimlerChrysler Jeep Plant in Toledo, Ohio. Plaintiffs argue Local 12 breached its duty of fair representation to them, as members.

Jurisdiction exists under 29 U.S.C. § 159(a) and 28 U.S.C. § 1337.

Pending is plaintiffs' motion for a preliminary injunction. For the following reasons, that motion will be denied.

**Background**

Plaintiffs are machine repairmen at the DaimlerChrysler Toledo Jeep Plant. They are members of Local 12.

Local 12 is a collective bargaining association that represents workers at the plant, including *inter alia*, machine repairmen, electricians, and millwrights.

On June 12, 2005, Local 12 and DaimlerChrysler issued two documents, the Lines of Demarcation, that allocated work at the plant among skilled trade workers, including machine

repairmen, electricians, and millwrights. Under these directives, work was shifted from one trade to another.

Plaintiffs allege Local 12 breached its duty of fair representation by allocating a disproportionate amount of work previously done by machine repairmen work to be performed thereafter by electricians and millwrights.

## Discussion

### I. Jurisdiction

As an initial matter, defendants argue this court lacks jurisdiction to issue a preliminary injunction under the Norris-LaGuardia Act, 29 U.S.C. § 101, *et seq*.

Section 101 provides:

> No court of the United States, as defined in this chapter, shall have jurisdiction to issue any restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute, except in a strict conformity with the provisions of this chapter; nor shall any such restraining order or temporary or permanent injunction be issued contrary to the public policy declared in this chapter.

29 U.S.C. § 101.

Plaintiffs contend § 101's jurisdictional bar is inapplicable to this dispute because the parties' disagreement does not stem from a labor dispute.

The Act defines a labor disputes as:

> The term "labor dispute" includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employee.

29 U.S.C. § 113(c).

The Supreme Court has held that "the critical element in determining whether the provisions of the Norris-LaGuardia Act apply is whether 'the employer-employee relationship [is] the matrix of the controversy.'" *Jacksonville Bulk Terminals, Inc. v. Int'l Longshoremen's Ass'n*, 457 U.S. 702, 712 (1982) (quoting *Columbia River Packers Ass'n., Inc. v. Hinton*, 315 U.S. 143, 147 (1942)). "The test is satisfied where an employer and a union representing its employees are the disputants, and their dispute concerns the interpretation of the collective bargaining agreement that defines their relationship." *Int'l Union United Auto., Aerospace and Agric. Implement Workers of Am. v. Lester Eng'g Co.*, 718 F.2d 818, 823 (6th Cir. 1983).

The matrix of the dispute at issue here does not involve the employer-employee relationship, but rather relationships between employees at the plant. At least one other court, moreover, has found the Norris-LaGuardia Act does not bar an internal union dispute over work assignments. *See Drywall Tapers & Pointers of Greater New York, Local 1974 v. Operative Plasterers' & Cement Masons' Int'l Ass'n*, 537 F.2d 669, 674 (2d Cir. 1976) (dispute between painters' union and plasters' union over work assignment agreement was not covered under the Norris-LaGuardia Act). Thus, the Norris-LaGuardia Act does not bar this court's jurisdiction.

## II. Standing

Defendants also argue plaintiffs have suffered no injury in fact and therefore lack standing.[1] *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc*., 528 U.S. 167, 180-81 (2000).

To demonstrate an injury in fact, a plaintiff must show the injury is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id.* at 180.

---

[1] Defendants do not challenge standing on any other ground.

3

Plaintiffs allege that after the implementation of the Lines of Demarcation, Local 12 resolved several job assignment grievances adversely against machine repairmen that otherwise would have been resolved in their favor. As a result, they allege they lost work and opportunity for overtime. Additionally, plaintiffs allege the imminent loss of twelve job opportunities in the Nitro Body Shop because of the new job assignments. Thus, plaintiffs have alleged an injury that is actual, concrete, and particularized. Therefore, plaintiffs have standing to pursue a preliminary injunction.

### III. Preliminary Injunction

Plaintiffs ask the court to enjoin Local 12 from implementing the Lines of Demarcation.

A court balances four factors when determining whether to issue a preliminary injunction: 1) whether the plaintiff has established a substantial likelihood or probability of success on the merits; 2) whether there is a threat of irreparable harm to the plaintiff; 3) whether issuance of the injunction would cause substantial harm to others; and 4) whether the public interest would be served by granting injunctive relief. *Chabad v. City of Cincinnati*, 363 F.3d 427, 432 (6th Cir. 2004); *Nightclubs, Inc. v. City of Paducah*, 202 F.3d 884, 888 (6th Cir. 2000).

Plaintiffs allege Local 12 acted arbitrarily in developing the Lines of Demarcation thus violating the union's duty of fair representation. In particular, they allege Local 12 acted without any input from machine repairmen to the benefit of electricians and millwrights. Thus, plaintiffs contend they are likely to succeed on the merits of their claim.

A union breaches its duty of fair representation if it actions towards a member are "arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes*, 386 U.S. 171, 190 (1967). Disagreements between union members, however, are inevitable and "[t]he complete satisfaction of all who are represented is hardly to be expected." *Shamblin v. Gen. Motors Corp.*, 743 F.2d 436, 438 (6th Cir. 1984).

4

Defendants contend plaintiffs are unable to meet this high burden. They, moreover, contend that the work has been shifted because the types of machines needing work are different from those in the old Jeep Plant, which the new Toledo North Assembly Plant replaces.

Assuming, *arguendo*, plaintiffs could succeed on the merits, the balance of the remaining factors does not weigh in favor of granting an injunction. *Nat'l Hockey League Players' Ass'n v. Plymouth Whalers Hockey Club*, 325 F.3d 712, 717 (6th Cir. 2003) ("[A] district court is not required to make specific findings concerning each of the four factors used in determining a motion for preliminary injunction if fewer factors are determinative of the issue.").

Plaintiffs argue that without an injunction, any further implementation of the Lines of Demarcation will cause them to lose additional work and job opportunities. They allege the union's treasury has insufficient funds to pay back wages should they win at trial. *See Aluminum Workers Int'l Union, AFL-CIO, Local Union No. 215 v. Consol. Aluminum Corp.*, 696 F.2d 437, 443 (6th Cir.1982) (empty victory as irreparable harm). Plaintiffs further contend there is no guarantee Local 12 will continue to fund its job bank from which it would pay wages for laid off members. Thus, plaintiffs argue irreparable harm will result without an injunction.

Defendants respond that no irreparable harm will result from the court's denial of an injunction. They contend that even if the plaintiffs were to lose their jobs, they would receive pay from the union's job bank. *See id.* (absent evidence employer will not reinstate employee or pay back wages, loss of employment is not irreparable harm). Thus, defendants argue plaintiffs will suffer no irreparable harm.

Speculation that the union will not continue to fund the job bank does not demonstrate plaintiffs will suffer irreparable harm without an injunction. *Jackson v. Michigan State Democratic*

5

*Party*, 593 F. Supp. 1033, 1047 (E.D. Mich. 1984) ("This court is not permitted to speculate in an effort to find irreparable injury.") Without evidence that the job bank will not be funded in the future, plaintiffs fail to demonstrate irreparable harm.

Next, plaintiffs argue an injunction would not harm other tradesmen because it will only serve to maintain the *status quo ante* – to classify work that has been traditionally reserved for machine repairmen for them. Thus, they argue the balance of the equities weighs in their favor.

Defendants, on the other hand, contend an injunction would create chaos at the plant – inevitably causing complaints from other tradesmen, who would be displaced by the injunction. They allege these complaints would stifle the productivity of the plant and overwhelm the union's grievance process.

Defendants, moreover, point out that the machine repairmen are alone in complaining about the Lines of Demarcation. They argue an injunction would replace a general lack of disagreement with machine by machine disputes and general uncertainty.

Balancing the interests and consequences of issuing the injunction, the harm an injunction would cause outweighs the alleged harm to the plaintiffs. Defendants implemented the Lines of Demarcation in June, 2005. An injunction almost a year later would have a severely disruptive effect on the union, other employees, and the company. It would create more disputes and uncertainty amongst tradesmen than continuing the implementation of the Lines of Demarcation. Thus, the balance of the equities weighs in favor of not granting the injunction.

Finally, this court must consider whether the public interest would be served by granting an injunction. *Chabad*, 363 F.3d at 432. While, as the plaintiffs point out, the public has an interest in

a union's duty of fair representation, the public's interests will best be served by denying the injunction and maintaining smooth operations at the plant.

Therefore, the balance of the four factors weighs against issuing an injunction.

## Conclusion

For the foregoing reasons, it is therefore,

ORDERED THAT plaintiffs' motion for a preliminary injunction be, and the same hereby is, denied.

So ordered.

/s/ James G. Carr
James G. Carr
Chief Judge
